IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RICHARD H. HANSON                                                       PLAINTIFF

VS.                                          CASE NO. 07-CV-1066

JOHN SELIG, Director,
Department of Human Services;
JONI JONES, Director,
Division of County Operations; and
DEPARTMENT OF HUMAN SERVICES                                            DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 19). The Plaintiff has responded to the motion. (Doc. No. 29). Defendants have filed a reply to Plaintiff's response. (Doc. No. 30). The matter is ripe for consideration.

## BACKGROUND

From August 31, 1998 through February 26, 1999, Plaintiff Richard Hanson was employed by the Arkansas Department of Human Services ("ADHS") as a Family Support Specialist I in Ouachita County, Arkansas. Before his six month probation period ended, Hanson was terminated from his position at ADHS. Following his termination, Hanson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and wrongful termination. Thereafter, on June 17, 1999, Hanson filed suit in this Court alleging sex discrimination and wrongful termination. On October 17, 2000, a jury returned a verdict in favor of the defendant and the case was dismissed. Hanson appealed the Judgment to the Eighth Circuit Court of Appeals. On January 28, 2002, the Eighth Circuit

affirmed the decision of the Court.

Since his termination from ADHS, Hanson has applied for over ninety positions with the department. Many of these applications were for positions in Ouachita County where Hanson had previously worked. Two of these applications are the subject of this lawsuit.

On January 9, 2006, Hanson submitted an application for Position Number 22100225H, a Family Support Specialist I position in Ouachita County. It was determined by the ADHS Recruitment Office that Hanson met the Minimum Qualifications ("MQs") for the position. Thereafter, Hanson's application, along with the other minimally qualified applicants, was referred to the hiring official in Ouachita County, Catherine Boston. Boston had been the Economic Services Supervisor in the Ouachita County office in 1998 and 1999, when Hanson previously worked for ADHS. She was not Hanson's direct supervisor during this time.

Hanson was contacted by Boston and interviewed for the Family Support Specialist I position on February 14, 2006. During the interview, Hanson answered a series of written interview questions in order to determine his knowledge, ability and skill ("KAS") regarding the position. Hanson's KAS score from the interview was 387.

After several interviews were completed, Boston realized that Position Number 22100225H was not a vacant position. The department's recruitment office was notified and the hiring cycle for this position was canceled.[1]

---

[1] In September 2006, this position became vacant and was re-advertised. Hanson applied for the job and was interviewed on November 13, 2006. Hanson's KAS score from this interview was 325. He ranked third among the applicants. Hanson was not hired for the position. Rather, Cynthia Marshall, an African-American female, was hired for the job. Ms. Marshall had been a Family Support Specialist in El Dorado for 5 years and scored 489 on her interview. (This position was filled after October 11, 2006, the date Hanson filed his EEOC charge of discrimination against the Defendants.

On January 27, 2006, Hanson submitted an application for Position Number 22102195H, a Family Support Specialist I position in Ouachita County. It was determined that Hanson met the MQs for the position. Twenty-four applications, including Hanson's, were referred to the hiring officer, Catherine Boston. Hanson contends that he was never contacted by Boston and never interviewed for this position. Rather, he claims that the Defendants used his February 14, 2006 KAS score of 387 to determine his rank among the position applicants. The Defendants claim that Hanson was interviewed for this position and he obtained a KAS score of 410.[2] They claim that this score was used to rank Hanson among the position applicants.

After the interviews were completed, Hanson ranked fourth among the job applicants.[3] The three applicants who scored higher than Hanson were Nilsa Austin, Watiki Gossett and Karen Fields. Nilsa Austin, an African American female, was the highest ranking applicant with a KAS score of 471.[4] Thereafter, Ms. Austin was offered and accepted Position Number 22102195H.

On February 21, 2006, Hanson submitted an application for Position Number 22111318H, a Family Support Specialist I position in Ouachita County. Again, it was determined that Hanson met the MQs of the job. Eleven applicants, including Hanson, were

---

Therefore, the hiring of Ms. Marshall for Position Number 22100225H is not part of Hanson's Title VII claims against the Defendants.)

[2] Defendants claim that Hanson was interviewed for this position on February 23, 2006. In support of this claim, Defendants have attached Hanson's interview questions and answers and his KAS score from that interview.

[3] This is true whether Defendants used a KAS score of 387 or 410.

[4] Watiki Gossett's KAS score was 469 and Karen Fields' KAS score was 450.

referred to the hiring officer, Catherine Boston.  Since Hanson had been interviewed for an identical position with identical KAS questions within the last ninety (90) days, he was not contacted or interviewed for this position.  Rather, Boston used his prior KAS score of 387 to rank him among the job applicants.

After the interviews were completed, Hanson was again ranked fourth among the job applicants.  The three other applicants who scored higher than Hanson were Wanquita Nettles, Watiki Gossett and Kimberly Thompson.  Wanquita Nettles was the highest ranked applicant with a score of 493.[5]  Nettles was offered Position Number 22111318H but declined the offer. Thereafter, the second ranked applicant, Watiki Gossett was offered the job and accepted it.

On October 11, 2006, Hanson filed a charge of discrimination with the EEOC.  In his charge, Hanson claimed that the Defendants discriminated against him on the basis of his race when it failed to hire him for the position of Family Support Specialist.  He also claimed that the Defendants retaliated against him for filing a previous EEOC charge alleging sex discrimination. Hanson claimed that this conduct was in violation of Title VII of the Civil Rights Act.  On April 30, 2007, the EEOC issued Hanson a Right to Sue letter.

On July 30, 2007, Hanson filed this lawsuit *pro se* against the Defendants, John Selig, Jonie Jones and the Department of Human Services.[6]  In his Complaint, Hanson alleges a series of actions by the Defendants which he claims constituted retaliation in violation of 42 U.S.C. § 1983, § 1986, § 1988 and § 2000.  The matter is now before the Court on Defendants' Motion for

---

[5] Watiki Gossett's KAS score was 469 and Kimberly Thompson's score was 453.

[6] In his Complaint, Hanson also named the State of Arkansas as a defendant.  On May 21, 2008, Hanson's claims against the State of Arkansas were dismissed.

Summary Judgment.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The

nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

DISCUSSION

Hanson alleges that the Defendants denied him interviews on two occasions and failed to hire him as a Family Support Specialist I in Ouachita County in retaliation of his filing a charge of discrimination with the EEOC in 1999. Hanson claims that Defendants' conduct was in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*[7]

In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,* the plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination. If the defendant sets forth such a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination. Therefore, the Court will analyze Hanson's claim of retaliation under this burden shifting framework.

---

[7] In his Complaint, Hanson also alleges that Defendants' conduct violated 42 U.S.C. § 1983, § 1986 and § 1988. However, in his response to Defendants' Motion for Summary Judgment, Hanson stipulates to the dismissal of these claims. Therefore, the Court finds that Hanson's claims under 42 U.S.C. § 1983, 42 U.S.C. § 1986, and 42 U.S.C. § 1988 should be dismissed.

A claim of retaliation pursuant to Title VII is not based upon race discrimination, but instead upon "an employer's action taken to punish an employee who makes a claim of discrimination." *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005). To establish a *prima facie* case of retaliation, Hanson must show that: 1) he participated in a protected activity; 2) the Defendants took an adverse employment action against him; and 3) there is a causal connection between the protected activity and the adverse employment action. *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2005).

Hanson alleges that the Defendants retaliated against him when they failed to interview and hire him as a Family Support Specialist I in early 2006. In 1999, Hanson filed a charge of discrimination with the EEOC and a lawsuit alleging sex discrimination and wrongful termination. In early 2006, Hanson was not hired by ADHS for either Position Number 22102195H or Position Number 22111318H, both Family Support Specialist I positions in Ouachita County. It is clear that Hanson participated in a protected activity and suffered an adverse employment action under the Act. Thus, he has satisfied the first and second elements of his *prima facie* case of retaliation. The Defendants argue that Hanson can not establish the third element of his *prima facie* case—a causal connection between the protected activity and the adverse employment action.

To prove a causal connection between the protected activity and an adverse employment action, " 'a plaintiff must prove that the employer's retaliatory motive played a part in the adverse action.' " *Gilooly v. Missouri Dept. of Health and Senior Services,* 421 F.3d 734, 739 (8th Cir. 2005)(quoting *Kipp v. Missouri Highway & Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir. 2002)). To establish the required causal link, a plaintiff must point to " '[e]vidence that

7

gives rise to an inference of retaliatory motive on the part of the employer' " *Id.* at 739-40 (quoting *Kipp,* 280 F.3d at 897).

Although an inference of causation may be drawn from the timing of the protected activity and the adverse employment action, often times, more than a temporal connection is needed to establish the required causal link between the two events. *Thomas v. Corwin,* 483 F.3d 516, 531 (8th Cir. 2007). Here, there is a seven-year gap between the time Hanson filed his EEOC charge and the hiring decisions at issue. Such a lengthy delay is too long to support an inference of retaliatory motive on the part of the Defendants. *Trammel v. Simmons First Bank of Searcy,* 345 F.3d 611, 616 (8th Cir. 2003); *see also Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1036 (8th Cir. 2005). Thus, Hanson can not establish a causal link between the two events on the basis of temporal proximity alone. He must show the required causal connection by other means such as discriminatory comments or actions. *See Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, 865 (8th Cir. 2006)(citing *Watson v. O'Neill*, 365 F.3d 609, 613 (8th Cir. 2004)); *see also McBurney v. Stew Hanson's Dodge City, Inc.,* 398 F.3d 998, 1003 (8th Cir. 2005).

Hanson has pointed to no discriminatory comments by any of the Defendants that would support a causal link between his 1999 EEOC charge and Defendants' failure to interview and hire him in early 2006. Rather, Hanson claims that a retaliatory motive can be inferred from Defendants' actions.

First, Hanson claims that the Defendants did not follow DHS hiring procedures when they failed to contact and interview him in connection with Position Numbers 22102195H and 22111318H. Hanson contends that a reasonable fact finder could infer a retaliatory motive from this conduct. The Court does not agree.

Under DHS's hiring procedures, interview scores are valid for ninety (90) calendar days from the date of the interview. This interview score may be used when considering an applicant for another position if 1) the score is used for an identical position title and classification code, 2) the interview questions and KAS statements are the same, and 3) the same people are conducting the interviews. Therefore, applicants do not have to be interviewed for a position if they have a valid interview score from a previous interview.

Here, Hanson applied for Position Number 22100225H, a Family Support Specialist I position in Ouachita County, on January 9, 2006. The classification code for that position was M020. On February 14, 2006, Catherine Boston interviewed Hanson for the position. His KAS score from this interview was 387. Thereafter, on January 27, 2006 and February 21, 2006, Hanson applied for Position Numbers 22102195H and 2211318H, both Family Support Specialist I positions in Ouachita County. The classification code for both of these position was also M020.

Hanson claims that Boston did not contact him or interview him for either position[8] in violation of DHS procedure. However, under DHS hiring procedure, Hanson had a valid KAS score from his February 14, 2006 interview for Position Number 22100225H. This score could be used when considering Hanson for Position Number 22102195H and Position Number 22111318H because all were Family Support Specialists I positions with the same classification codes, their interview questions and KAS statements were the same and the same person,

---

[8] The Court is required to view the evidence in the light most favorable to Hanson. Therefore, although the Defendants claim that Hanson was interviewed for Position Number 22102195H on February 23, 2006, the Court will make its analysis on the basis that Hanson was not interviewed for either Position Number 22102195H or Position Number 22111318H.

Catherine Boston, conducted the interviews for all three positions. Thus, Boston was not required to contact and interview Hanson for Position Number 22102195H or Position Number 22111318H. His KAS score from his February 14, 2006 interview was valid and could be used when considering Hanson for either position. Therefore, the fact that he was not interviewed for either of these positions does not create an inference of retaliatory motive on the part of the Defendant and does not establish a causal connection between Hanson's protected activity and the adverse employment action.

Next, Hanson states that Catherine Boston, the hiring official in this case, and Erma Brown, the reviewing officer, were his supervisors during his previous employment with ADHS.[9] He also states that they responded to his EEOC charge in 1999. Hanson claims that an inference of retaliatory motive can be inferred from these facts. The Court does not agree. There is no evidence that either Boston or Brown was in anyway upset or irritated that Hanson filed an EEOC charge in 1999. Thus, the bare facts that they supervised Hanson and responded to his EEOC charge is insufficient to create an inference of retaliatory motive on their part some seven years later and does not establish a causal link between Hanson's protected activity and the adverse employment action.

Finally, Hanson claims that Boston and Brown changed their views of his qualifications after he filed his EEOC charge in 1999. He claims that before he filed his EEOC charge, they considered him highly qualified and after the charge, they did not. Hanson contends that a retaliatory motive can be inferred from this change of view. However, there is no evidence that

---

[9] During 1998-99, Boston and Brown were in Hanson's chain of command at ADHS, but neither was his direct supervisor.

either Boston or Brown changed their view of Hanson's qualifications. Rather, the evidence shows that they thought Hanson was qualified, if not highly qualified, to work for ADHS. In fact, he was ranked fourth among the fourteen applicants considered for Position Number 22102195H [10] and fourth among the eight applicants considered for Position Number 22111318H.[11] He was just not the most qualified for these positions. This is insufficient to infer a retaliatory motive on the part of Boston or Brown. Thus, it does not establish a causal connection between Hanson's protected activity and the adverse employment action.

Hanson has failed to establish a causal link between his 1999 EEOC charge and the Defendants failure to hire him in early 2006. Thus, he has failed to satisfy the third element of his *prima facie* case of retaliation. However, even if Hanson had established his *prima facie* case, the result would be the same. Defendants have presented a legitimate, non-discriminatory reason for their hiring decisions at issue in this case. There were other individuals who were more qualified than Hanson for both Position Number 22102195H and Position Number 22111318H. In response, Hanson contends that Defendants' failure to follow DHS hiring procedures shows that their stated reason for their hiring decisions was merely a pretext for discrimination. However, the Court has held that the Defendants did not deviate from DHS hiring procedures when Hanson was not contacted or interviewed for these two positions.

---

[10] There were 24 applicants who met the MQs for Position Number 22102195H. However, only 14 applicants were considered for the position. Ten applicants were not considered because they declined an interview, failed to show for their interview or could not be contacted.

[11] There were 11 applicants who met the MQs for Position Number 22111318H. However, only 8 applicants were considered for the position. Three applicants were not considered because they could not be contacted or failed to show for their interview.

Therefore, Hanson has failed to show that Defendants' asserted reason for their failure to hire him in early 2006 was merely a pretext for illegal retaliation. Accordingly, Hanson's claims of retaliation must fail as a matter of law.

## CONCLUSION

For the reasons stated herein and above, the Court finds that Defendants' Motion for Summary Judgment should be and hereby is **granted**. A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 9th day of February, 2009.

                                                /s/Harry F. Barnes
                                              Hon. Harry F. Barnes
                                              United States District Judge